UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re:<br><br>GPX INTERNATIONAL TIRE<br>CORPORATION<br><br>          Debtor | Chapter 11<br><br>Case No. 09- |

**MOTION BY DEBTOR FOR APPROVAL OF BIDDING PROCEDURES IN
CONNECTION WITH MOTION BY DEBTOR AND DEBTOR IN POSSESSION FOR
ORDER (A) AUTHORIZING THE SALE OF SOLID TIRE ASSETS BY PUBLIC
AUCTION, FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (B)
AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN OR REJECT CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) RELATED RELIEF**
(Expedited Determination Requested)

GPX International Tire Corporation (the "Debtor"), the debtor and debtor-in-possession in the above captioned action, requests the approval of sales and bidding procedures in conjunction with the *Motion by Debtor And Debtor in Possession For Order (A) Authorizing The Sale of Solid Tire Assets by Public Auction, Free And Clear of Liens, Claims And Interests, (B) Authorizing The Debtor to Assume And Assign or Reject Certain Executory Contracts And Unexpired Leases, And (C) Related Relief* (the "Public Auction Motion"). The Public Auction Motion seeks approval of the sale, by public auction with reserve (the "Public Auction"), of certain of the Debtor's assets (collectively the "Solid Tire Assets") related to its solid and semi-solid off-the-road tire products business. The Solid Tire Assets would be sold as a going concern free and clear of all liens, claims and interests. In conjunction with the proposed sale, the Debtor requests the approval of the bid procedures described below.

The Solid Tire Assets are used in the operation of one of the Debtor's primary businesses. The Debtor's other primary business is its off highway and tire truck business (the "OTR/Truck Unit"). The Debtor proposes to sell the OTR/Truck Unit in its entirety to two separate purchasers in two separate, but interrelated, private sales (collectively the "Private Sales"). Alliance Tire Co. (1992) USA Ltd. ("Alliance") would acquire the Debtor's U.S. OTR/Truck Unit operations, including its assets, customer relationships, warehouse footprint, *Galaxy* and *Primex* brands and *Aeolus* medium radial truck tire distribution license (the "Alliance Assets"). The Debtor has also entered into an agreement with 2220753 Ontario Inc. ("Ontario"), an entity that was formed by Allegro Rubber International Inc. and Robert Sherkin and Peter Koszo, who are managers of the Debtor's indirect subsidiary, Dynamic Tire Corp.("Dynamic"), and interest holders in the Debtor, and therefore insiders as that term is defined in Section 101(31) of the Bankruptcy Code. Ontario has agreed to purchase the Debtor's stock interest in Dynamic, which (pursuant to a Supply and Distribution Agreement with the purchaser of the Alliance Assets) will continue the sale and distribution in Canada of the *Galaxy* and *Primex* brand off-the-road tires as well as the sale and distribution of medium radial truck and passenger car tires and private label sourcing. The proposed sale of Dynamic will be accomplished through the sale, free and clear of liens claims and interests, of the stock of Dynamic's parent, 2082320 Ontario Inc. ("ExchangeCo"), a wholly owned subsidiary of the Debtor, along with certain other assets (collectively the "Dynamic Assets").

To permit interested parties to make counter-offers for any or all of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets, the Debtor has requested that the Court establish the same schedule for the Private Sales and the Public Auction.[1]

---

[1] Contemporaneously with the filing of the motions requesting approval of the two sales, the Debtor has filed two corresponding motions to approve proposed bid procedures and termination fees.

2

In further support of this motion, the Debtor avers as follows:

## JURISDICTION

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

## BACKGROUND[2]

3. On October 26, 2009 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with this Court.

4. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code and no trustee or committee has been appointed as of the date of this motion.

5. The Debtor was founded in 1922 as Gans Tire Salvage, originally focusing on the sale of salvaged and surplus tires. Today, the Debtor is a leading independent manufacturer and marketer of highly engineered, top quality off the road ("OTR") pneumatic (air filled), solid and semi-solid tires for agricultural, industrial and construction equipment. The Debtor sells these branded tires to original equipment manufacturers (OEMs), such as Bobcat, Caterpillar, Case New Holland and John Deere, and aftermarket distributors (with small quantities sold through affiliated retail stores). The Debtor also provides contract manufacturing and sourcing of branded truck and passenger tires for leading tire companies, such as TBC Corp., and, until

---

[2] Additional background information is contained in the *Affidavit of Craig Steinke in Support of First Day Motions And Applications*, which is incorporated herein by reference.

recently, Goodyear and Continental. These tires are manufactured to customer specifications, produced under their brand names and distributed through the customers' own dealer networks.

6. The Debtor's facilities in the United States include a production facility for solid and semi-solid tires in Gorham, Maine, a network of distribution warehouses located throughout the U.S. and several retail stores. The Debtor's Chinese subsidiary, Hebei Starbright Tire Co., Ltd. ("Starbright"), owns a production facility for solid, semi-solid and pneumatic OTR tires in Hebei Province, China. Another Chinese subsidiary of the Debtor coordinates logistics and leases an office and a warehouse in Tianjin, China, which stores tires prior to shipment to the U.S. The Debtor also has administrative, sales and warehousing facilities in Brampton, Ontario (as well as smaller warehouses in Quebec and Alberta, Canada), leased by its Canadian subsidiary, and a sales, marketing and distribution office in Rodenbach, Germany operated through its German subsidiary.

7. As of the Petition Date, the Debtor employed approximately 200 employees in the United States. The Debtor's subsidiaries employ approximately 1,300 people worldwide.

8. As a result of its financial difficulties, the Debtor determined that a sale of its businesses as going concerns was in the best interest of the Debtor and its creditors.

9. Prior to the Petition Date, the Debtor identified and approached parties in its industry who were likely strategic buyers.

10. After discussions with multiple parties, the Debtor selected Alliance as the so-called stalking horse bidder for the Alliance Assets and Ontario as the stalking horse bidder for the Dynamic Assets. The Debtor then negotiated and, subject to court approval, entered into the Alliance APA and a stock purchase agreement with Ontario (the "Dynamic APA", and together with the Alliance APA the "APAs").

11. Contemporaneously with the filing of this motion, the Debtor has filed the Public Auction Motion, a motion to sell the Alliance Assets free and clear of liens, claims and encumbrances (the "Alliance Sale Motion") and a motion to sell the Dynamic Assets free and clear of liens, claims and encumbrances (the "Dynamic Sale Motion", and together with the Public Auction Motion and the Alliance Sale Motion the "Sale Motions").

12. The proposed purchase price for the Alliance Assets is US$38,300,000 consisting of (a) US$33,000,000 in cash (subject to adjustment pursuant to the Alliance APA), and (b) the assumption by Alliance approximately $5,300,000 of the Debtor's liabilities relating to the Alliance Assets. The proposed purchase price for the Dynamic Assets is approximately US$23,915,000 plus an amount equal to all of Dynamic's cash and cash equivalents as of the Closing Date (as defined in the Dynamic APA), less the amount of Dynamic's obligations under the Credit Agreement (as defined in the Dynamic APA),subject to adjustment pursuant to the Dynamic APA.

13. Both the Alliance APA and the Dynamic APA require the purchasers of the Alliance Assets and the Dynamic Assets to enter into various agreements (collectively the "Ancillary Agreements") concerning post-sale operations. The Ancillary Agreements are set forth in the APAs and are described in the Sale Motions. Potential buyers of the Solid Tire Assets would be required to enter into certain of the Ancillary Agreements.

14. The proposed bid procedures set forth below include procedures for soliciting bids for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or any combination of the foregoing.

15. The Debtor seeks approval of the bidding procedures to ensure an orderly sale process and promote the maximum recovery for the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

16. Prior to the Petition Date, the Debtor engaged TM Capital Corp. ("TM Capital"), as an investment banker, to assist the Debtor in restructuring its businesses. TM Capital worked closely with the Debtor's management to (i) analyze the current financial position of the Debtor and its businesses, (ii) prepare presentation materials regarding the Debtor and its business which could be provided to prospective purchasers, (iii) identify and contact prospective purchasers, solicit their interest, execute confidentiality agreements with such parties and circulate presentation materials, (iv) solicit and review acquisition proposals from such parties; (v) conduct due diligence meetings with such parties, and (vi) conduct negotiations with such parties regarding transaction value, structure and terms. Because of competitive and disclosure considerations, TM Capital's initial marketing efforts were limited to approximately 34 parties, including 7 strategic and 27 financial parties.

17. Upon approval of the bidding procedures and subject to the approval of TM Capital's retention, TM Capital intends to promptly commence a broader marketing program for the Debtor and its business to seek higher and better offers. It is currently anticipated that this will include contacting approximately 130 parties (inclusive of the 34 parties previously contacted), which would include approximately 50 strategic parties and approximately 80 financial parties. The Debtor and TM Capital intend to publish, in at least one newspaper of wide circulation, a summary notice of the intent to sell the Alliance Assets, the Dynamic Assets and the Solid Tire Assets free and clear of liens, claims and interests, and the relevant sale deadlines.

18. TM Capital is familiar with the Debtor's business and the proposed sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets. On the Petition Date, the Debtor filed an application to retain TM Capital as an investment banker to assist in locating and soliciting higher or better offers for its businesses, including the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

19. A due diligence room has been established and populated with the materials that the Debtor believes is necessary to conduct due diligence for the purposes of making counter-offers for the Solid Tire Assets as well as the Alliance Assets and the Dynamic Assets. Interested parties may, upon the execution of a confidentiality agreement, obtain access to the due diligence materials.

20. Upon the execution of a confidentiality agreement, interested parties may also obtain a copy of the draft asset purchase agreement governing the sale of the Solid Tire Assets (the "Draft APA"). The Draft APA contains, among other things, the following required provisions (collectively the "Required Provisions"): (a) an acknowledgment that in the event the bidder is determined to be the successful bidder for the Solid Tire Assets and fails to close on the sale of the Solid Tire Assets through no fault of the bidder, the Deposit (as defined below) submitted by such party shall be forfeited to the Debtor; (b) an agreement that if the bid is determined to be the second highest bid for the Solid Tire Assets, such bid shall be binding and irrevocable until 23 days after the entry of the order approving the Solid Tire Assets (the "Sale Order"), and (c) an acknowledgment of and agreement to be bound by the terms and conditions of the Bidding Procedures (as defined below).

## RELIEF REQUESTED

A.  Bidding Procedures

21. The Debtor requests that the order approving the bidding procedures (the "Bid Procedures Order") approve the following bidding procedures (together with the "Cure Claim Procedures, defined below, the "Bidding Procedures") for use in the sale of the Solid Tire Assets:

    a.    In order to participate in the Public Auction, parties must submit an bid that meets the requirements set forth in these bid procedures (a "Qualified Bid"). In addition to submitting a bid for the Solid Tire Assets, parties may also submit counter-offers for either (i) the Alliance Assets, (ii) the Dynamic Assets, or (iii) all or any combination of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets (collectively the "Combined Assets"). Parties who intend to submit counter-offers for the Alliance Assets and/or the Dynamic Assets (sometimes collectively the "Private Sale Assets"), must comply with the bid procedures established with respect to the sales of such assets. Parties who intend to submit bids for the Solid Tire Assets in conjunction with counter-offers for one or more of the Private Sale Assets may submit a single bid/counter-offer, provided that it complies with each of the applicable bid procedures, and must at a minimum, allocate a portion of the purchase price to the Solid Tire Assets.

    b.    A Qualified Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[3] with the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court"), John W. McCormack Building, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949, on or before 4:30 p.m. on the fifth (5th) business day prior to the scheduled hearing (the "Public Sale Hearing") on the Public Auction Motion (the "Bidding Deadline"). A Qualified Bid must be served on counsel for the Debtor, counsel for the administrative agent under the Debtor's pre-petition credit facility, the Office of the United States Trustee, counsel for Alliance and counsel for Ontario (collectively the "Service Parties").

    c.    Minimum Bid. A Qualified Bid must be for an amount not less than $9,000,000 in cash plus the liabilities assumed pursuant to the Draft APA.

    d.    A Qualified Bid must include the following: (i) a written offer for the Solid Tire Assets; (ii) A completed and executed "Bidder Information Sheet" (in the form provided by the Debtor upon request) that includes, among other things, (1) the

---

[3] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

8

  identity of the bidder with contact information, (2) full disclosure of any affiliates or insiders of the Debtors involved in such bid, and (3) at statement of the form of Deposit (i.e. certified check or wire deposit); (iii) an executed form of the Draft APA, marked to show changes from the original, provided that no changes may be made to the Required Provisions; (iv) a deposit of not less than $450,000 (the "Deposit") in the form of a certified check or wire transfer, delivered to Hanify & King, P.C. on or before the Bidding Deadline; (v) written evidence of the bidder's ability to consummate the transaction (such as a current audited financial statement or bank account statement) and evidence of adequate assurance of future performance with respect to any Assigned Contract (as defined below) that the bidder has selected to be assumed and assigned to the bidder; (vi) written evidence of a financing commitment sufficient to permit the consummation of the transactions in question; and (vii) an executed confidentiality agreement with the Debtor containing customary non-solicit and non-hire obligations and a standstill with respect to any customers (that are not current customers of such party) covered in any commercial data provided to such party. All such confidentiality agreements shall have a two (2) year term and shall be assignable to the buyer of the Solid Tire Assets.

e.  A Qualified Bid must not be subject to contingencies for financing or the completion of due diligence.

f.  A Qualified Bid that includes a counter-offer for one or more of the Private Sale Assets must be accompanied by an executed asset purchase agreement (i) in the form of the respective asset purchase agreement, in all cases with such changes as are acceptable to the entity submitting the Qualified Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing APA"); and (ii) marked to show changes from the respective original asset purchase agreement.

g.  The terms and conditions of Qualified Bid that includes a counter-offer for one or more of the Private Sale Assets must be, in aggregate, not materially more burdensome to the Debtor than the provisions contained in the applicable asset purchase agreement and the applicable Ancillary Agreements.

h.  A Qualified Bid that includes a counter-offer for one or more of the Private Sale Assets must be accompanied by a deposit, in addition to the Deposit, for the respective Private Sale Assets (the "Additional Deposit"). The Additional Deposit must be delivered to Hanify & King, P.C. on or before the Bidding Deadline. For the Alliance Assets, the Additional Deposit shall be $1,000,000. For the Dynamic Assets the Additional Deposit shall be $1,250,000. For two or more of the Combined Assets the deposit shall be the aggregate of the applicable deposits for each separate asset group. The Additional Deposit shall be in the form of a certified check or wire transfer, and must be received on or before Bidding Deadline. The Additional Deposit will be forfeited in the event that such

    competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor.

i.     <u>Conduct of Public Auction</u>. The terms of the bidding at the Public Auction shall be announced at the Public Auction, provided that at the Public Auction, a bid shall be accepted only if the cash portion of such bid is at least $100,000 greater than the previously submitted bid. The Debtor shall determine the order of any auctions of the Solid Tire Assets and/or one or both of the Private Sale Assets. The auction shall take place at the Bankruptcy Court.

j.     <u>Bankruptcy Court Approval of Successful Bidder</u>. The highest and best offer selected at the Public Auction is subject to the approval of the Bankruptcy Court. A hearing (the "Auction Hearing") to: (i) confirm the results of the Public Auction; and (ii) to determine any issues relating to the assumption and assignment of any Assigned Contract, shall be held before the Bankruptcy Court on _____, 2009 at _____ (EST).

k.     <u>Closing.</u> The successful bidder for the Solid Tire Assets (the "Successful Bidder") shall tender the balance of its bid in cash or cashier's check to the Debtor no later than three (3) business days after the entry of the Sale Order ("Closing Date"). In the event that a Successful Bidder fails to consummate the sale of the Solid Tire Assets, the second highest bidder at the Public Auction (as selected by the Debtor and confirmed by the Bankruptcy Court) shall have three (3) business days to tender the balance of its bid to the Debtor following written notification from the Debtor of their intent to accept such bidders bid; provided that the Debtor is not obligated to accept the second highest bid.

l.     <u>Failure to Consummate Purchase.</u> In the event the Successful Bidder fails to consummate its bid by the Closing Date, the second highest bidder (the "Second Bidder"), as selected by the Debtor and confirmed by the Bankruptcy Court, will automatically be deemed to have submitted the highest and best bid and the Debtor, in its discretion, shall be authorized, but not required, to effect the sale of the Solid Tire Assets to the Second Bidder without further Order of the Bankruptcy Court. The Second Bidder shall have three (3) business days to tender the balance of its bid to the Debtor following written notification from the Debtor of the intent to accept the Second Bidder's bid.

m.     <u>Business Judgment of the Debtors; Right to Modify Bidding Procedures.</u> Subject to the approval of the Bankruptcy Court, the Debtor reserves the right to (i) determine, in its discretion which Qualified Bid is the highest or otherwise best offer for the Solid Tire Assets, whether alone or in combination with the Private Sale Assets; (ii) to reject, at any time prior to the entry of the Sale Order, any bid for the Solid Tire Assets that Debtor determines to be (1) inadequate or insufficient, or (2) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures; and (iii) modify the Bidding Procedures for the Public Auction as circumstances arise.

    n.    <u>The Public Auction is being conducted with reserve</u>. The Public Auction is expressly being conducted with reserve. The Debtors expressly reserve the right to remove all or any part of the Solid Tire from the Public Auction at any time prior to the entry of the Sale Order.

    o.    The Public Auction shall be held only if more than one Qualified Bid is submitted by the Bid Deadline.

22.    In the event the party who submits the highest and best bid for the Solid Tire Assets fails to close on the sale through no fault of the Debtor, the Debtor requests that the Bid Procedures Order provide that such party's Deposit and Additional Deposit (if applicable) be forfeited to the Debtor.

23.    If the party submitting the highest and best offer fails to close on the sale the Solid Tire Assets, the Debtor requests that the Bid Procedures Order provide the Debtor with the authority to sell the Solid Tire Assets to the party submitting the second highest or best offer (the "Back-Up Bid"), as determined at the Public Sale Hearing, without further Court approval.

B.    <u>Cure Claim Procedures</u>.

24.    With respect to executory contracts and/or unexpired leases that are assumed and assigned pursuant to the APAs (collectively the "Assigned Contracts"), the Debtor proposes the following procedures (the "Cure Claim Procedures"):

    a.    Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure amount, if any, as set forth in the Assigned Contract Notice (as defined below), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses as of the Petition Date (including accrued but not yet due obligations) must be cured or satisfied under any of the Assigned Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "Cure Obligation"), must file and serve an objection (a "Assumption/Assignment Objection") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bidding Deadline (the "Assumption/Assignment Objection Deadline").

    b.    An Assumption/Assignment Objection must set forth with specificity any and all Cure Obligations or conditions which such party asserts must be cured or satisfied

11

with respect to such Assigned Contract; provided, however, that any party to an Assigned Contract shall retain the right to prosecute an objection with respect to adequate assurance of future performance only until the Public Sale Hearing and only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline. An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions to assignment, and the support therefore and all other objections to assumption and assignment.

c. Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure Obligation and to have otherwise consented to the assignment and shall be forever barred and estopped from asserting or claiming against the Debtor, the buyer of the Alliance Assets, or any other assignee of the relevant assigned contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such Assigned Contract for the period prior to the Petition Date.

d. Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Public Sale Hearing, or (ii) at such other date as the Court may designate; provided that (1) if the subject Assigned Contract is assumed and assigned prior to resolution of any Assumption/Assignment Objection, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited by buyer to be held in a segregated account maintained by the Debtor or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties, and (2) hearings with respect to Cure Objections must be held prior the closing of the sale of the Alliance Assets unless otherwise agreed to by the purchaser of the Alliance Assets.

e. Attached as Exhibit A is a proposed form of notice (the "Assigned Contract Notice") that includes information with respect to the procedures for the Assigned Contracts. The Debtor proposes to serve the Assigned Contract Notice on all parties to the Assigned Contracts.

### THE BIDDING PROCEDURES SHOULD BE APPROVED

25.     Good and sufficient cause exists to approve the proposed Bidding Procedures. The Bidding Procedures will assist in administering an orderly sale process. The Bidding Procedures are the customary for going-concern sales in this district.

### THE PROPOSED SALES OF THE DYNAMIC ASSETS AND THE SOLID TIRE ASSETS

26. As described more fully in the Sale Motions, due to the integration of the Debtor's operations, it will be necessary for the buyers of the Dynamic Assets, the Alliance Assets and/or the Solid Tire Assets to enter into some of the Ancillary Agreements to provide transitional administrative services for a period of time after the closing of the respective sales. Parties who intend to submit Qualified Bids must comply not only with the terms of the respective asset purchase agreements, but must also comply with the terms of the Ancillary Agreements, as applicable.

27. It is necessary, in order to permit interested parties to make counter-offers for the Combined Assets, for the sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets to proceed on the same schedule. The Debtor requests that the Court establish the same schedule for the sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

### NOTICE

28. Copies of this motion have been served upon the United States Trustee, all secured creditors, the Debtor's twenty (20) largest unsecured creditors, and all parties who have file a notice of appearance and request for notice. The Debtor requests that such notice be deemed sufficient and appropriate notice.

WHEREFORE, the Debtor requests that the Court enter an Order, substantially in the form attached as Exhibit A: (a) approving this motion, (b) approving the Bidding Procedures, (c) approving the Assigned Contract Notice, (d) establishing deadlines for the submission of counter-offers and the filing of objections consistent with any such deadlines established with respect to the sale of the Dynamic Assets, (e) setting a hearing on the Public Auction Motion on

the same date as the hearing on the proposed sale of the Dynamic Assets, and (f) granting it such other relief as is just and proper.

Respectfully submitted,

GPX INTERNATIONAL TIRE CORPORATION
By its counsel,


/s/ Harold B. Murphy
Harold B. Murphy (BBO#326610)
D. Ethan Jeffery (BBO#631941)
Natalie B. Sawyer (BBO #660072)
HANIFY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts  02108
Phone: (617) 423-0400
Fax: (617) 423-0498

Dated:  October 26, 2009

::ODMA\PCDOCS\DOCS\544297\1

14