# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| **In re:** | ) |
| | ) |
| | )    **Chapter 11** |
| **GPX INTERNATIONAL TIRE** | ) |
| **CORPORATION** | )    **Case No. 09-20170** |
| | ) |
| **Debtor** | ) |
| | ) |

## MOTION BY DEBTOR TO (A) AMEND BID PROCEDURES ORDER, (B) APPROVE TERMINATION FEE IN CONNECTION WITH PRIVATE SALE OF SOLID TIRE ASSETS, (C) ESTABLISH HEARING DATE AND RELATED DEADLINES FOR PROPOSED SALE, AND (D) APPROVE FORM AND MANNER OF SERVICE
*(Expedited Determination Requested)*

GPX International Tire Corporation (the "Debtor"), the debtor and debtor-in-possession in the above captioned action, moves the Court for an order (a) amending the bid procedures order dated November 2, 2009 [docket no. 133](the "Bid Procedures Order"), solely with respect to the bid procedures for the Solid Tire Assets (as defined below), (b) approving a termination fee in conjunction with the proposed private sale of the Solid Tire Assets, (c) establish a hearing date and related deadlines for the proposed sale, and (d) approving the form and manner of notice of the proposed sale of the Solid Tire Assets. The Debtor has entered into an asset purchase agreement (the "Solid Tire APA") that contemplates the sale of certain of the Debtor's assets related to its solid and semi-solid off-the-road tire products, including its Gorham, Maine, Red Lion, Pennsylvania and Hebei, China manufacturing facilities (collectively the "Solid Tire Assets") to MITL Acquisition Company, LLC ("MITL").

The Debtor has filed a motion for authority to sell the Solid Tire Assets by public auction [docket no. 10](the "Public Auction Motion") so that the Solid Tire Assets would be available

for purchase in conjunction with the proposed sale of the Debtor's off highway and tire truck business (the "OTR/Truck Unit"), which is being sold in two separate, but interrelated, transactions to Alliance Tire Co. (1992) USA Ltd. ("Alliance") and 2220753 Ontario Inc. ("Ontario"). In conjunction with the Public Auction Motion, the Court entered the Bid Procedures Order, establishing, among other things, procedures for the public auction of the Solid Tire Assets. Pursuant to the Bid Procedures Order, the initial bids required to qualify for the public auction of the Solid Tire Assets are due on December 2, 2009. The public auction of the Solid Tire Assets is currently scheduled for December 7, 2009.

MITL has offered $10,000,000 for the Solid Tire Assets and has executed the Solid Tire APA.[1] The MITL offer provides the Debtor's bankruptcy estate with a certain recovery for the Solid Tire Assets and also provides the estate and prospective purchasers, through the Solid Tire APA, with a definitive agreement that will govern the terms of the sale of the Solid Tire Assets. Contemporaneously with the filing of this motion, the Debtor has filed the *Debtor's Motion (A) to Authorize Debtor to Effectuate Asset Purchase Agreement With MITL Acquisition Company, LLC; (B) to Authorize Sale of Solid Tire Assets by Private Sale Free And Clear of Liens, Claims And Interests; (C) to Authorize The Assumption And Assignment of Executory Contracts, (D) to Authorize The Rejection of Executory Contracts, And (E) For Related Relief* (the "Solid Tire Sale Motion").

To permit interested parties to make counter-offers for all or any one of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets, the Debtor requests that the Court place the proposed private sale of the Solid Tire Assets on the same schedule as the proposed sales of the Alliance Assets and the Dynamic Assets. On October 30, 2009, the Debtor served notice of

---

[1] Pursuant to the Bid Procedures Order, the minimum bid at public auction for the Solid Tire Assets is $9,000,000.

2

the Public Auction Motion on all creditors and parties in interest, and, subject to the Court's allowance of this motion, the Debtor will notify all creditors and parties in interest of the proposed private sale of the Solid Tire Assets and applicable deadlines.

In further support of this motion, the Debtor avers as follows:

### JURISDICTION

1. This Court has jurisdiction to consider and determine this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this motion include Sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure, and MLBR 6004-1 and 6006-1.

### BACKGROUND[2]

3. On October 26, 2009 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with this Court.

4. The Debtor continues to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On or about November 6, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").

5. The Debtor was founded in 1922 as Gans Tire Salvage, originally focusing on the sale of salvaged and surplus tires. Today, the Debtor is a leading independent manufacturer and marketer of highly engineered, top quality off the road ("OTR") pneumatic (air filled), solid and semi-solid tires for agricultural, industrial and construction equipment. The Debtor sells these

---

[2] Additional background information is contained in the *Affidavit of Craig Steinke in Support of First Day Motions And Applications* [docket no. 5], which is incorporated herein by reference.

3

branded tires to original equipment manufacturers (OEMs), such as Bobcat, Caterpillar, Case New Holland and John Deere, and aftermarket distributors (with small quantities sold through affiliated retail stores). The Debtor also provides contract manufacturing and sourcing of branded truck and passenger tires for leading tire companies, such as TBC Corp., and, until recently, Goodyear and Continental. These tires are manufactured to customer specifications, produced under their brand names and distributed through the customers' own dealer networks.

6. The Debtor's facilities in the United States include a production facility for solid and semi-solid tires in Gorham, Maine, a network of distribution warehouses located throughout the U.S. and several retail stores. The Debtor's Chinese subsidiary, Hebei Starbright Tire Co., Ltd. ("Starbright"), owns a production facility for solid, semi-solid and pneumatic OTR tires in Hebei Province, China. Another Chinese subsidiary of the Debtor coordinates logistics and leases an office and a warehouse in Tianjin, China, which stores tires prior to shipment to the U.S. The Debtor also has administrative, sales and warehousing facilities in Brampton, Ontario (as well as smaller warehouses in Quebec and Alberta, Canada), leased by its Canadian subsidiary, and a sales, marketing and distribution office in Rodenbach, Germany operated through its German subsidiary.

7. As of the Petition Date, the Debtor employed approximately 200 employees in the United States. The Debtor's subsidiaries employ approximately 1,300 people worldwide.

8. As a result of its financial difficulties, the Debtor determined that a sale of its businesses as going concerns was in the best interest of the Debtor and its creditors.

9. Prior to the Petition Date, the Debtor identified and approached parties in its industry who were likely strategic buyers.

10. After discussions with multiple parties, the Debtor selected Alliance as the so-called stalking horse bidder for the Alliance Assets and Ontario as the stalking horse bidder for the Dynamic Assets. The Debtor then negotiated and, subject to court approval, entered into the Alliance APA and a stock purchase agreement with Ontario (the "Dynamic APA", and together with the Alliance APA and the Solid Tire APA the "APAs").

11. The Debtor has filed a motion to sell the Alliance Assets free and clear of liens, claims and interests (the "Alliance Sale Motion")[docket no. 6], and a motion to sell the Dynamic Assets free and clear of liens, claims and encumbrances (the "Dynamic Sale Motion")[docket no. 8]. The Solid Tire Sale Motion, the Alliance Sale Motion and the Dynamic Sale Motion are collectively referred to as the "Sale Motions".

12. The proposed purchase price for the Alliance Assets is US$38,300,000 consisting of (a) US$33,000,000 in cash (subject to adjustment pursuant to the Alliance APA), and (b) the assumption by Alliance approximately $5,300,000 of the Debtor's liabilities relating to the Alliance Assets. The proposed purchase price for the Dynamic Assets is approximately US$23,915,000 plus an amount equal to all of Dynamic's cash and cash equivalents as of the Closing Date (as defined in the Dynamic APA), less the amount of Dynamic's obligations under the Credit Agreement (as defined in the Dynamic APA), subject to adjustment pursuant to the Dynamic APA.

13. Both the Alliance APA and the Dynamic APA require the purchasers of the Alliance Assets and the Dynamic Assets to enter into various agreements (collectively the "Ancillary Agreements") concerning post-sale operations. The Ancillary Agreements are set forth in the APAs and are described in the Sale Motions.

14. The proposed bid procedures set forth below include procedures for soliciting bids for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or any combination of the foregoing.

15. The Debtor seeks approval of the bidding procedures to ensure an orderly sale process and promote the maximum recovery for the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

16. Prior to the Petition Date, the Debtor engaged TM Capital Corp. ("TM Capital"), as an investment banker, to assist the Debtor in restructuring its businesses. TM Capital worked closely with the Debtor's management to (i) analyze the current financial position of the Debtor and its businesses, (ii) prepare presentation materials regarding the Debtor and its business which could be provided to prospective purchasers, (iii) identify and contact prospective purchasers, solicit their interest, execute confidentiality agreements with such parties and circulate presentation materials, (iv) solicit and review acquisition proposals from such parties; (v) conduct due diligence meetings with such parties, and (vi) conduct negotiations with such parties regarding transaction value, structure and terms. Because of competitive and disclosure considerations, TM Capital's initial marketing efforts were limited to approximately 34 parties, including 7 strategic and 27 financial parties.

17. TM Capital has commenced and is continuing a broader marketing program for the Debtor and its business to seek higher and better offers. The Debtor has prepared a summary notice of the intent to sell the Alliance Assets, the Dynamic Assets and the Solid Tire Assets free and clear of liens, claims and interests, and such notice will shortly be published in the Wall Street Journal.

18. TM Capital is familiar with the Debtor's business and the proposed sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets. On the Petition Date, the Debtor filed an application to retain TM Capital as an investment banker to assist in locating and soliciting higher or better offers for its businesses, including the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

### RELIEF REQUESTED

A. <u>Bidding Procedures</u>

19. The Debtor requests that the Court amend the Bid Procedures Order to substitute the following bidding procedures for the Solid Tire Assets bidding procedures set forth in the Bid Procedures Order:[3]

    a. Competing bids may be submitted for either (i) the Alliance Assets, (ii) the Dynamic Assets, (iii) the Solid Tire Assets, or (iv) all or any combination of the foregoing (collectively the "Combined Assets").

    b. Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms substantially similar to those set forth in the APAs for the purchase of substantially all of the assets described in the respective APA, (ii) made upon terms substantially similar to those set forth in the Ancillary Agreements, and (iii) (A) for the Alliance Assets for a cash amount of not less than $35,230,000 and assumed liabilities and/or additional cash consideration, or a combination thereof, of not less than the amount of assumed liabilities provided for under the Alliance APA (current estimate of $5,300,000) (the "Alliance Overbid"), (B) for the Dynamic Assets for an amount of not less than $24,665,000 plus an amount equal to all of Dynamic's cash and cash equivalents as of the Closing Date, as defined in the Dynamic APA (the "Dynamic Overbid"), (C) for the Solid Tire Assets for a cash amount of not less than $10,450,000 and assumed liabilities and/or additional cash consideration, or a combination thereof, of not less than the amount of assumed liabilities provided for under the Solid Tire APA (current estimate of $1,300,000) (the "Solid Tire Overbid") and (D) for a Competing Bid involving two or more of the Combined Assets for an amount of not less than the aggregate of the Alliance Overbid (if applicable), the Dynamic Overbid (if applicable), and the Solid Tire Overbid (if applicable) and (iv) such

---

[3] The Debtor is not requesting any change to the approved bidding procedures for the sale of the Alliance Assets or the Dynamic Assets.

7

competing bid contains the information and satisfies the requirements for constituting a "Competing Bid" set forth in the other clauses of this Paragraph 19.

c. A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[4] with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949, on or before 4:30 p.m. on December 2, 2009 (the "Private Sale Bidding Deadline"). A Competing Bid must be served on (a) counsel for the Debtor, Harold B. Murphy, Esq., Hanify & King, Professional Corporation; (b) counsel for the Debtor's prepetition lender, Mark Broude, Esq., Latham & Watkins, LLP, 885 Third Avenue, New York, New York, 10022-4834; (c) Eric Bradford, Esq., the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949; (d) counsel for Alliance, Brian M. Resnick, Esq., Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York, 10017; and Richard Mikels, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C., One Financial Center, Boston, Massachusetts, 02111, (e) counsel for Ontario, and (f) counsel for MITL, William R. Moorman, Jr., Esq., Craig and Macauley Professional Corporation, 600 Atlantic Avenue, Boston, Massachusetts, 02210 (collectively the "Service Parties").

d. A Competing Bid that includes either the Alliance Assets and/or the Dynamic Assets and/or the Solid Tire Assets must be accompanied by an executed asset purchase agreement in the form of the respective asset purchase agreement, or, in the case of a Competing Bid including two or more of the Alliance Assets, the Dynamic Assets, and/or the Solid Tire Assets, all applicable APAs, in all cases with such changes as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing APA").

e. A Competing Bid for the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets must be accompanied by a marked copy of the Competing APA(s) showing changes from the respective asset purchase agreement.

f. The terms and conditions of the Competing Bid must be, in aggregate, not materially more burdensome to the Debtor than the provisions contained in the applicable asset purchase agreement and the applicable Ancillary Agreements. A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

g. Any competing bidder must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer, and must be received on or before the Bidding Deadline. The deposit delivered by a competing bidder will be forfeited in the

---

[4] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5005-4.

event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. For the Alliance Assets, the deposit shall be $1,000,000. For the Dynamic Assets the deposit shall be $1,250,000. For the Solid Tire Assets the deposit shall be $450,000. For two or more of the Combined Assets the deposit shall be the aggregate of the applicable deposits for each separate asset group.

h. Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under the Ancillary Agreements, (iii) it is able to perform under any assumed contracts and/or leases, (iv) it is able to fulfill any remaining obligations under the respective asset purchase agreement(s), and (v) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i. Any party who wishes to view available information with respect to the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets must execute a confidentiality agreement with the Debtor containing customary non-solicit and non-hire obligations and a standstill with respect to any customers (that are not current customers of such party) covered in any commercial data provided to such party. All such confidentiality agreements shall have a 2-year term and shall be assignable to the buyer of the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets, as applicable, and will be included as "Purchased Assets" under the Alliance APA, as "Included Assets" under the Dynamic APA, and/or "Purchased Assets" under the Solid Tire APA, as applicable.

j. An auction for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets and/or the Combined Assets shall be held only if there is a Competing Bid for the respective assets. In the absence of a Competing Bid, the Debtor shall seek approval of the sales to Alliance, Ontario and/or MITL, as applicable.

k. Bidding at any auction for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets shall be conducted by the Court immediately prior to the Sale Hearing in accordance with bidding procedures to be announced at the time of the auction. The auction shall take place at the Court. The auction shall be by open bid, provided that the Debtor reserves the right to request that the Court conduct the auction by sealed bid(s). Any bids for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets after the initial Competing Bid for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets, as applicable, shall be accepted only if the cash portion of such bid is at least $100,000 greater than the previously submitted bid (subject to clauses (m) and/or (n) below, as applicable). To the extent a Competing Bid

includes additional cash consideration in lieu of assumed liabilities (as permitted by Paragraph 19(a) above), for purposes of the foregoing sentence the assumption of liabilities shall be deemed to be part of the cash portion of any bid submitted by any other party (but solely to such extent and solely for such purpose).

l. Any party submitting a Competing Bid must agree to keep its offer open for at least twenty-three (23) days following the entry of an order approving the sale of the Alliance Assets, the Dynamic Assets, the Solid Tire Assets and/or the Combined Assets and must agree to close in the event the party who submits the successful bid fails to close.

m. At the auction, the Debtor will take the Alliance Termination Fee into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Alliance Assets or, if applicable, the Combined Assets.

n. At the auction, the Debtor will take the Dynamic Expense Reimbursement into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Dynamic Assets or, if applicable, the Combined Assets.

o. At the auction, the Debtor will take the MITL Termination Fee into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Solid Tire Assets or, if applicable, the Combined Assets.

20. The Debtor is not requesting any modification to: (a) the procedures established in the Bid Procedures Order with respect to executory contracts and/or unexpired leases that are assumed and assigned pursuant to the Solid Tire APA (Bid Procedures Order ¶ 4); (b) the authorization to sell the Solid Tire Assets to the party submitting the next highest offer in the event the winning bidder fails to close (Bid Procedures Order ¶ 6); or (c) the provisions of the Bid Procedures Order respecting the forfeiture of deposits (Bid Procedures Order ¶ 7).

B.     Termination Fee Provisions and Escrow Deposit[5]

21.    Subject to this Court's approval, the Solid Tire APA provides that MITL is entitled to: (a) up to $350,000 of MITL's reasonable, documented out-of-pocket expenses in the event that MITL terminates the Solid Tire APA based on the Debtor's breach of the Solid Tire APA (the "Expense Reimbursement"), or (b) a fee of $350,000 (the "Fee", and together with the "Expense Reimbursement the "MITL Termination Fee") if the Solid Tire APA is terminated under certain circumstances and a Competing Transaction (as defined in the Solid Tire APA) is consummated within twelve (12) months of the termination of the Solid Tire APA. MITL is entitled to the Expense Reimbursement or the Fee, but not both.

22.    Section 6.2 of the Solid Tire APA provides, among other things, that the MITL Termination Fee will, if payable, constitute an administrative expense of Seller under section 503(b) of the Bankruptcy Code, and, unless previously paid, shall be paid out of the proceeds to the Debtor from any transaction with any such competing bidder (prior to or at the closing of such transaction) and without any further Order of this Court.

23.    Section 6.2 of the Solid Tire APA provides, in essence, that the MITL Termination Fee is payable as follows:

   a.   MITL is entitled to the Fee upon the consummation of the sale of the Solid Tire Assets to a buyer other than MITL, provided such sale closes within twelve (12) months after such termination;

   b.   MITL is entitled to the Expense Reimbursement if MITL chooses to terminate the Solid Tire APA because of a material breach by the Debtor of any covenant, representation or warranty; and

   c.   MITL is entitled to the Fee if the Debtor terminates the Solid Tire APA because the sale of the Solid Tire Assets to MITL does not close by January 15, 2010

---

[5] The description of the Termination Fee and related provisions contained in this motion is not meant to be a substitute for the Solid Tire APA which contains additional terms and conditions. In the event of a conflict between this motion and the Solid Tire APA, the Solid Tire APA shall control.

11

Case 09-20170 Doc 203 Filed 11/12/09 Entered 11/12/09 11:36:55 Desc Main
Document Page 12 of 18

through no fault of MITL, and a sale of the Solid Tire Assets to another buyer is consummated within twelve (12) months after such termination.

24. In the event MITL is not the successful bidder for the Solid Tire Assets, MITL has agreed to keep its offer (as such offer may have changed at auction) open (subject to the terms and conditions of the Solid Tire APA) for at least twenty-three (23) days after the entry of an order approving the sale of the Solid Tire Assets, but not later than January 15, 2010, and (subject to the terms and conditions of the Solid Tire APA) to close on such offer in the event the successful bidder for the Solid Tire Assets fails to do so.

25. The MITL Termination Fee is reasonable given the size and complexity of the transaction contemplated by the Solid Tire APA. The MITL Termination Fee is approximately equal to three and one-half percent (3.5%) of the proposed purchase price under the Solid Tire APA.

26. MITL has submitted a $450,000 deposit into an escrow account (the "Escrow Account") and has executed an escrow agreement with the Debtor to govern such account. The proposed order modifying the Bid Procedures Order, a copy of which is attached as Exhibit A, includes the same treatment for the Escrow Account as is provided to Alliance and Dynamic for their escrowed deposits.

### THE BIDDING PROCEDURES AND THE MITL TERMINATION FEE SHOULD BE APPROVED

27. Good and sufficient cause exists to approve the proposed amendments to the Bid Procedures Order and the MITL Termination Fee.

28. The proposed modifications to the Bid Procedures Order and the MITL Termination Fee are the product of negotiation between the Debtor and MITL. The Bidding Procedures and the MITL Termination Fee will assist in administering an orderly sale process and provide reasonable and ordinary protection to MITL.

29. The Bidding Procedures are the usual and ordinary bidding procedures for going-concern sales in this district and are substantially the same as the bidding procedures approved in the Bid Procedures Order for the sale of the Alliance Assets and the Dynamic Assets.

30. In *In re O'Brien Environmental Energy, Inc.*, the Third Circuit held that termination fees should be allowed where such "fees were actually necessary to preserve the value of the estate." *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). A break-up fee will provide a benefit to an estate if, for example, "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id.* Other examples of a benefit provided by a break-up fee would be if the initial offer which included the break-up fee "served as a catalyst to higher bids" or "if the availability of break-up fees and expenses were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely . . . ." *Id.*

31. MITL has expended, and likely will continue to expend considerable time, money and energy pursuing the sale and has engaged in extended and lengthy good faith negotiations. The Solid Tire APA is the culmination of these efforts.

32. The MITL Termination Fee was a material inducement for, and a condition of, MITL's entry into the Solid Tire APA. MITL is unwilling to act as the stalking-horse bidder without the MITL Termination Fee. By having MITL as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Solid Tire Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid and will therefore promote such bids. The approval of the

13

MITL Termination Fee will benefit the Debtor's bankruptcy estate. Termination fees are common in sales of this type and complexity.

33. The Debtor believes that the MITL Termination Fee is fair and reasonable in view of, among other things, (a) the intensive analysis, due diligence investigation, and negotiation undertaken by MITL in connection with the sale transaction, (b) the fact that MITL's efforts have increased the chances that the Debtor will receive the highest and best offer available for the Solid Tire Assets by establishing a bid standard or minimum for other bidders, placing the property of the Debtor's estate in a sale mode thereby potentially attracting other bidders to the auction and serving as a catalyst for other potential or actual bidders for the Solid Tire Assets, to the benefit of the Debtor, its estate, its creditors and all other parties in interest, and (c) MITL's offer is $1,000,000 more than the minimum bid required at the public auction.

### HEARING DATE AND RELATED DEADLINES

34. As described more fully in the Sale Motions, due to the integration of the Debtor's operations, it will be necessary for the buyers of the Dynamic Assets, the Alliance Assets and the Solid Tire Assets to enter into the Ancillary Agreements to provide transitional administrative services for a period of time after the closing of the respective sales. Parties who intend to submit Competing Bids must comply not only with the terms of the respective asset purchase agreements, but must also comply with the terms of the Ancillary Agreements.

35. A hearing on the proposed sale of the Alliance Assets and the Dynamic Assets has been scheduled for December 7, 2009. Counter-offers and objections with respect to the proposed sales of the Alliance Assets and the Dynamic Assets are due on December 2, 2009, at 4:30 p.m. On October 30, 2009, the Debtor served notice of this hearing date and related deadlines with respect to the Public Auction Motion on all creditors and parties in interest, and,

subject to the Court's allowance of this motion, the Debtor will notify all creditors and parties in interest of the proposed private sale of the Solid Tire Assets and applicable deadlines.

36. Because the sales of the Combined Assets are interrelated, it is necessary, in order to permit interested parties to make counter-offers for the Combined Assets, for the sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets to proceed on the same schedule. The Debtor requests that the Court establish the same schedule for the sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets.

### FORM AND MANNER OF SERVICE

37. The Debtor proposes to serve a copy of the Solid Tire Sale Motion, each of their related exhibits and this motion (the "Sale Package") on: (a) the Office of the United States Trustee; (b) all secured creditors of the Debtor; (c) all governmental agencies asserting priority tax claims; (d) the Creditors' Committee, (e) the creditors holding the twenty (20) largest unsecured claims; (f) all counterparties to executory contracts and unexpired leases; and (g) each party who has filed a notice of appearance and request for service of papers in this case (collectively, the "Primary Parties").

38. In lieu of serving a copy of the Sale Package on all creditors and parties-in-interest, the Debtor proposes to serve the notice attached as <u>Exhibit B</u> (the "Notice") on all creditors and parties in interest, including, (a) all creditors, present employees and individuals who have been employees within the past two years, and equity security holders of the Debtor, (b) all Persons, if any, known to have asserted a property interest or security interest in or lien upon any Purchased Assets, (c) all non-Debtor parties to the executory contracts and/or unexpired leases that the Debtor proposes to assume, assign and/or reject pursuant to the Sale Motions, (d) all Persons who have filed notices of appearance in this Bankruptcy Case or are

listed on the Master Service List, (e) the United States Trustee for the District of Massachusetts, (f) counsel for the committee of unsecured creditors, (g) all federal, state and local taxing, environmental and other governmental authorities that have a reasonably known interest in the relief requested by the Sale Motion, (h) the Internal Revenue Service, (i) the United States Attorney's Office, (j) the attorneys general of each State in which the Debtor conducts business; (k) the Securities and Exchange Commission, (l) all Persons that have expressed an interest, during the past six months, in purchasing any of the assets proposed to be sold under the Sale Motions, and (m) all other Persons identified by the Debtor or its advisors as potential bidders for the assets proposed to be sold under the Sale Motions.

39. The Debtor previously established a website (www.hanify.com/gpx.html) where creditors and parties in interest can access, without cost, the pleadings and documents relating to the proposed sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets. The Debtor will post the Sale Package on that website.

40. The Notice identifies the objection deadline and hearing date with respect to the Sale Motions, references the Bid Procedures Orders and the requirement that all parties intending to make counteroffers or bids on any of the assets being sold via the Sale Motions must comply with the terms and conditions of the relevant Bid Procedures Order, provides instructions by which creditors and other parties may obtain copies, free of charge, of the Sale Package by mail, electronic mail or via the Internet, and otherwise complies with Rule 2002(c)(1) of the Federal Rules of Bankruptcy Procedure. The Debtor submits that the foregoing service complies with the Federal Rules of Bankruptcy Procedure, this Court's local rules, and is appropriate in this case.

41. There are over five hundred fifty creditors and parties-in-interest listed on the Debtor's matrix. The Sale Package is voluminous and the cost of mailing them to the full creditor list would be substantial.

42. Federal Rule of Bankruptcy Procedure 2002(a) requires that creditors and parties in interest receive at least twenty (20) days notice by mail of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice." Fed. R. Bankr. Proc. 2002(a)(2).

43. MLBR 2002-1(a) provides, in relevant part, that "[u]nless the Court orders otherwise, the moving party shall give notice to all parties entitled to notice under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, MLBR, or an order of the Court, of the following events: (1) the proposed use, sale or lease of property of the estate." MLBR 2002-1(a)(1). *See also* Fed. R. Bankr. P. 9007 (providing the Court with general authority to regulate notices).

44. Service by the Debtor of the Notice to all creditors and parties-in-interest, including the Primary Parties, complies with the applicable rules of procedure as the Primary Parties will receive copies of the Sale Package, and all other creditors and parties-in-interest will receive notice of, among other things, the objection deadline and the hearing date on the Sale Motions and have an opportunity to object. *See* Fed. R. Bankr. P. 2002 and 9007; MLBR 2002-1(a).

45. Based upon the foregoing, no creditor or party in interest will be prejudiced by the manner of service and form of notice proposed in this motion.

WHEREFORE, the Debtor requests that the Court enter an Order, substantially in the form attached as Exhibit A: (a) approving this motion, (b) approving the proposed modifications to the Bid Procedures Order, (c) approving the MITL Termination Fee in accordance with the Solid Tire APA, (d) establishing deadlines for the submission of counter-offers for the Solid Tire Assets and the filing of objections to the Solid Tire Sale Motion consistent with the corresponding deadlines established for the sales of the Alliance Assets and the Dynamic Assets, (e) approving the Notice and the manner of service described in this motion, and (f) granting it such other relief as is just and proper.

Respectfully submitted,

GPX INTERNATIONAL TIRE CORPORATION
By its proposed counsel,


 /s/ D. Ethan Jeffery
Harold B. Murphy (BBO#326610)
D. Ethan Jeffery (BBO#631941)
Natalie B. Sawyer (BBO #660072)
HANIFY & KING, Professional Corporation
One Beacon Street
Boston, Massachusetts 02108
Phone: (617) 423-0400
Fax: (617) 423-0498

Dated: November 12, 2009