## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

|  |  |
|---|---|
| In re:<br><br>**GPX INTERNATIONAL TIRE CORPORATION**<br><br>Debtor | **Chapter 11**<br><br>Case No. 09-20170 (JNF) |

## ORDER MODIFYING ORDER ESTABLISHING BID
## PROCEDURES FOR THE SALES OF THE DEBTOR'S ASSETS

GPX International Tire Corporation (the "Debtor"), the debtor and debtor-in-possession

in the above captioned action, having filed the *Motion by Debtor to (A) Amend Bid Procedures*

*Order, (B) Approve Termination Fee in Connection With Private Sale of Solid Tire Assets, (C)*

*Establish Hearing Date And Related Deadlines For Proposed Sale, And (D) Approve Form And*

*Manner of Service* (the "Motion to Amend") seeking to amend the Order dated November 2,

2009 [docket no. 133](the "Bid Procedures Order") and approve a termination fee and the form

and manner of service , with respect to the Debtor's proposed sale of certain of the Debtor's

assets (the "Solid Tire Assets") to MITL Acquisition Company, LLC ("MITL"); the Court

having considered the Motion to Amend and all pleadings associated with the Motion to Amend;

and upon the arguments of counsel and the evidence presented at the hearing on the Motion to

Amend; and after due deliberation and sufficient cause therefore,

**THIS COURT HEREBY FINDS THAT:**

A.    Capitalized terms not otherwise defined in this order shall have the respective

meanings attributed to such terms in the Motion to Amend.

B.  This Court has jurisdiction over the Bankruptcy Case pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1).  Venue of the Bankruptcy Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Debtor has filed the *Debtor's Motion (A) to Authorize Debtor to Effectuate Purchase And Sale Agreement With MITL Acquisition Company, LLC; (B) to Authorize Sale of Solid Tire Assets by Private Sale Free And Clear of Liens, Claims And Interests; (C) to Authorize The Assumption And Assignment of Executory Contracts, (D) to Authorize The Rejection of Executory Contracts, And (E) For Related Relief* (the "Solid Tire Sale Motion").  The Solid Tire Sale Motion seeks the approval of an asset and stock purchase agreement between the Debtor and MITL (the "Solid Tire APA") that contemplates the sale, as a going certain, of the Solid Tire Assets.  The sale of the Solid Tire Assets would be by private sale free and clear of all liens, claims and interests.

C.  MITL has submitted a $450,000 deposit (the "Solid Tire Deposit") into an escrow account (the "Solid Tire Escrow Account") and has executed an escrow agreement with the Debtor to govern such account (the "Solid Tire Escrow Agreement").

D.  Due to the integration of the Debtor's operations, it will be necessary for the buyers of the Dynamic Assets (as defined by the Bid Procedures Order), the Alliance Assets (as defined by the Bid Procedures Order) and the Solid Tire Assets to enter into ancillary agreements to provide transitional administrative services for a period of time after the closing of the respective sales.  Because the sales of the combined assets are interrelated, it is necessary, in order to permit interested parties to make a counter-offer for all or a combination of the Dynamic Assets, the Alliance Assets and the Solid Tire Assets, for the sales of the Alliance Assets, the Dynamic Assets and the Solid Tire Assets to proceed on the same schedule.

2

E.      Among other things, the Solid Tire APA provides that MITL is entitled to: (i) up to $350,000 of MITL's reasonable, documented out-of-pocket expenses (the "Expense Reimbursement") in the event that MITL terminates the Solid Tire APA based on the Debtor's breach of the Solid Tire APA, or (ii) a fee of $350,000 (the "Fee", and together with the Expense Reimbursement the "MITL Termination Fee") if the Solid Tire APA is terminated under certain circumstances and a Competing Transaction (as defined in the Solid Tire APA) is consummated within twelve (12) months of the termination of the Solid Tire APA. MITL is entitled to the Expense Reimbursement or the Fee, but not both.

F.      The Debtor solicited the "stalking-horse" bid from MITL. MITL has expended, and likely will continue to expend considerable time, money and energy pursuing the sale and has engaged in extended and lengthy good faith negotiations. The Solid Tire APA is the culmination of these efforts.

G.      The MITL Termination Fee provisions were a material inducement for, and a condition of, MITL's entry into the Solid Tire APA. MITL is unwilling to act as the stalking-horse bidder without the MITL Termination Fee. By having MITL as a stalking-horse bidder, much of the due diligence, contract negotiation and other work necessary to submit a bid for the Solid Tire Assets will have been completed. This will shorten the time and cost required for prospective bidders to submit a Competing Bid (as defined below) and will therefore promote such bids. The sale of the Solid Tire Assets as a going concern without a stalking-horse bidder would be more time consuming, more expensive and would likely lead to fewer competitive bids. The approval of the MITL Termination Fee will therefore benefit the Debtor's bankruptcy estate. Termination fees are common in sales of this type and complexity.

3

H.     The MITL Termination Fee was negotiated by the parties in good faith and at arms' length, and is fair and reasonable in view of, among other things, (a) the intensive analysis, due diligence investigation, and negotiation undertaken by MITL in connection with the sale transaction, and (b) the fact that MITL's efforts have increased the chances that the Debtor will receive the highest and best offer available for the Solid Tire Assets by establishing a bid standard or minimum for other bidders, placing the property of the Debtor's estate in a sale mode thereby potentially attracting other bidders to the auction and serving as a catalyst for other potential or actual bidders for the Solid Tire Assets, to the benefit of the Debtor, its estate, its creditors and all other parties in interest.

I.     Good and sufficient cause exists for the entry of this Order.

**NOW THEREFORE, it is HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.     The Motion to Amend is hereby granted.

2.     A hearing on the Solid Tire Sale Motion shall be held on December 7, 2009, at 10:00 a.m. (the "Sale Hearing").

3.     The Bid Procedures Order is hereby modified to provide that the following bid procedures shall apply to the sale of the Solid Tire Assets:

   a.     Competing bids may be submitted for either (i) the Alliance Assets, (ii) the Dynamic Assets, (iii) the Solid Tire Assets, or (iv) all or any combination of the foregoing (collectively the "Combined Assets").

   b.     Any competing bid shall be deemed to qualify as a competing bid (a "Competing Bid") only if: (i) made upon terms substantially similar to those set forth in the APAs for the purchase of substantially all of the assets described in the respective APA, (ii) made upon terms substantially similar to those set forth in the Ancillary Agreements, and (iii) (A) for the Alliance Assets for a cash amount of not less than $35,230,000 and assumed liabilities and/or additional cash consideration, or a combination thereof, of not less than the amount of assumed liabilities provided for under the Alliance APA (current estimate of $5,300,000) (the "Alliance

4

Overbid"), (B) for the Dynamic Assets for an amount of not less than $24,665,000 plus an amount equal to all of Dynamic's cash and cash equivalents as of the Closing Date, as defined in the Dynamic APA (the "Dynamic Overbid"), (C) for the Solid Tire Assets for a cash amount of not less than $10,450,000 and assumed liabilities and/or additional cash consideration, or a combination thereof, of not less than the amount of assumed liabilities provided for under the Solid Tire APA (current estimate of $1,300,000) (the "Solid Tire Overbid") and (D) for a Competing Bid involving two or more of the Combined Assets for an amount of not less than the aggregate of the Alliance Overbid (if applicable), the Dynamic Overbid (if applicable), and the Solid Tire Overbid (if applicable) and (iv) such competing bid contains the information and satisfies the requirements for constituting a "Competing Bid" set forth in the other clauses of Paragraph 3 of this Order.

c.     A Competing Bid must contain a case caption as set forth above and be filed, in accordance with the applicable Federal and local Rules of Bankruptcy Procedure,[1] with the United States Bankruptcy Court for the District of Massachusetts, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949, on or before 4:30 p.m. on December 2, 2009 (the "Private Sale Bidding Deadline"). A Competing Bid must be served on (a) counsel for the Debtor, Harold B. Murphy, Esq., Hanify & King, Professional Corporation; (b) counsel for the Debtor's prepetition lender, Mark Broude, Esq., Latham & Watkins, LLP, 885 Third Avenue, New York, New York, 10022-4834; (c) Eric Bradford, Esq., the Office of the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, Massachusetts, 02109-3949; (d) counsel for Alliance, Brian M. Resnick, Esq., Davis Polk & Wardwell, LLP, 450 Lexington Avenue, New York, New York, 10017; and Richard Mikels, Esq., Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C., One Financial Center, Boston, Massachusetts, 02111, (e) counsel for Ontario, and (f) counsel for MITL, William R. Moorman, Jr., Esq., Craig and Macauley Professional Corporation, 600 Atlantic Avenue, Boston, Massachusetts, 02210 (collectively the "Service Parties").

d.     A Competing Bid that includes either the Alliance Assets and/or the Dynamic Assets and/or the Solid Tire Assets must be accompanied by an executed asset purchase agreement in the form of the respective asset purchase agreement, or, in the case of a Competing Bid including two or more of the Alliance Assets, the Dynamic Assets, and/or the Solid Tire Assets, all applicable APAs, in all cases with such changes as are acceptable to the entity submitting the Competing Bid, including a purchase price expressed in U.S. Dollars and accompanied by all exhibits and schedules thereto (a "Competing APA").

---

[1] Including, without limitation, the restrictions on facsimile filings pursuant to MLBR 5C05-4.

e.      A Competing Bid for the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets must be accompanied by a marked copy of the Competing APA(s) showing changes from the respective asset purchase agreement.

f.      The terms and conditions of the Competing Bid must be, in aggregate, not materially more burdensome to the Debtor than the provisions contained in the applicable asset purchase agreement and the applicable Ancillary Agreements. A Competing Bid must not be subject to contingencies for financing or the completion of due diligence.

g.      Any competing bidder must deliver a cash deposit to counsel for the Debtor at the time of submission of such bid. The cash deposit shall be in the form of a certified check or wire transfer, and must be received on or before the Bidding Deadline. The deposit delivered by a competing bidder will be forfeited in the event that such competing bidder is the successful bidder and fails to close on the sale through no fault of the Debtor. For the Alliance Assets, the deposit shall be $1,000,000. For the Dynamic Assets the deposit shall be $1,250,000. For the Solid Tire Assets the deposit shall be $450,000. For two or more of the Combined Assets the deposit shall be the aggregate of the applicable deposits for each separate asset group.

h.      Any party submitting a Competing Bid shall demonstrate to the Debtor's satisfaction that: (i) it is financially able to consummate the transactions contemplated by the Competing Bid, which ability may be demonstrated by submission of bank statements, current audited or unaudited financial statements, or other reasonable evidence, or, if the bidder is an entity formed for the purpose of acquiring the assets in question, current audited or unaudited financial statements or other reasonable evidence of the financial capability of the equity holders of the bidder, (ii) it is able to perform under the Ancillary Agreements, (iii) it is able to perform under any assumed contracts and/or leases, (iv) it is able to fulfill any remaining obligations under the respective asset purchase agreement(s), and (v) it has written evidence of a financing commitment sufficient to permit the consummation of the transactions in question.

i.      Any party who wishes to view available information with respect to the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets must execute a confidentiality agreement with the Debtor containing customary non-solicit and non-hire obligations and a standstill with respect to any customers (that are not current customers of such party) covered in any commercial data provided to such party. All such confidentiality agreements shall have a 2-year term and shall be assignable to the buyer of the Alliance Assets, the Dynamic Assets and/or the Solid Tire Assets, as applicable, and will be included as "Purchased Assets" under the Alliance APA, as "Included Assets" under the Dynamic APA, and/or "Purchased Assets" under the Solid Tire APA, as applicable.

j.  An auction for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets and/or the Combined Assets shall be held only if there is a Competing Bid for the respective assets. In the absence of a Competing Bid, the Debtor shall seek approval of the sales to Alliance, Ontario and/or MITL, as applicable.

k.  Bidding at any auction for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets shall be conducted by the Court immediately prior to the Sale Hearing in accordance with bidding procedures to be announced at the time of the auction. The auction shall take place at the Court. The auction shall be by open bid, provided that the Debtor reserves the right to request that the Court conduct the auction by sealed bid(s). Any bids for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets after the initial Competing Bid for the Alliance Assets, the Dynamic Assets, the Solid Tire Assets or the Combined Assets, as applicable, shall be accepted only if the cash portion of such bid is at least $100,000 greater than the previously submitted bid (subject to clauses (m) and/or (n) below, as applicable). To the extent a Competing Bid includes additional cash consideration in lieu of assumed liabilities (as permitted by Paragraph 3(a) above), for purposes of the foregoing sentence the assumption of liabilities shall be deemed to be part of the cash portion of any bid submitted by any other party (but solely to such extent and solely for such purpose).

l.  Any party submitting a Competing Bid must agree to keep its offer open for at least twenty-three (23) days following the entry of an order approving the sale of the Alliance Assets, the Dynamic Assets, the Solid Tire Assets and/or the Combined Assets and must agree to close in the event the party who submits the successful bid fails to close.

m.  At the auction, the Debtor will take the Alliance Termination Fee into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Alliance Assets or, if applicable, the Combined Assets.

n.  At the auction, the Debtor will take the Dynamic Expense Reimbursement into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Dynamic Assets or, if applicable, the Combined Assets.

o.  At the auction, the Debtor will take the MITL Termination Fee into account when considering which offer constitutes the highest and best offer, and with respect to the minimum incremental overbid requirement established pursuant to clause (k) above, with respect to the Solid Tire Assets or, if applicable, the Combined Assets.

7

4.      Paragraph 3 of the Bid Procedures Order shall not apply to the sale of the Solid Tire Assets.

5.      No changes to the Bid Procedures Order with respect to executory contracts or unexpired leases that are proposed to be assumed and assigned pursuant to the Alliance APA or the Solid Tire APA are required.

6.      In the event MITL is not the successful bidder for the Solid Tire Assets, MITL shall keep its offer (as such offer may have changed at auction) open (subject to the terms and conditions of the Solid Tire APA) for at least twenty-three (23) days after the entry of an order approving the sale of the Solid Tire Assets, but not later than January 15, 2010, and (subject to the terms and conditions of the Solid Tire APA) to close on such offer in the event the successful bidder for the Solid Tire Assets fails to do so.

7.      The provisions of the Solid Tire APA requiring the Debtor to pay the MITL Termination Fee, if and when either such obligation arises under the terms and conditions set forth therein, are hereby approved and incorporated herein by reference as if fully set forth herein. MITL's right to the MITL Termination Fee, under the terms and conditions set forth in the Solid Tire APA, is hereby deemed to be allowed administrative expense claims against the Debtor under Section 503(b) of the Bankruptcy Code. The Debtor is authorized and directed to pay the MITL Termination Fee in the time and manner set forth in the Solid Tire APA, if and when the Debtor's obligation arises thereunder, without any other or further order of this Court.

8.      The Solid Tire Escrow Account, and the contents thereof, do not constitute property of the Debtor's bankruptcy estate under Section 541 of the Bankruptcy Code. The Debtor's and MITL's rights to the Solid Tire Escrow Account, and its contents, shall be governed by the Solid Tire Escrow Agreement and the Solid Tire APA, and the Debtor's rights

8

under the Solid Tire Escrow Agreement and the Solid Tire APA in respect of the Solid Tire Escrow Account are property of the Debtor's bankruptcy estate. Notwithstanding the foregoing, the funds on deposit in the Solid Tire Escrow Account shall be released to MITL or the Debtor in accordance with the terms of the Solid Tire Escrow Agreement without further order of the court (and the automatic stay under Section 362 of the Bankruptcy Code is hereby waived to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release in accordance with the terms of the Solid Tire Escrow Agreement and the Solid Tire APA).

9.      This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order and the Bid Procedures Order.

10.     The Debtor is hereby authorized and empowered to take such steps, expend such sums of money and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

*[handwritten: Deleted BYF]*

11.     Except as specifically provided in this order, the Bid Procedures Order shall remain in effect.

*[signature]*

Hon. Joan N. Feeney
United States Bankruptcy Judge

Dated: *Nov. 13* , 2009

::ODMA\PCDOCS\DOCS\545960\1

9